IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SUSAN FLACK

           **Plaintiff,**

  v.                                Civil Action 2:18-cv-501
                                       Judge Sarah D. Morrison
                                       Magistrate Judge Jolson

COMMISSIONER OF
SOCIAL SECURITY,

           **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Susan Flack brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 24) and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff filed her applications for DIB and SSI on March 26, 2014, alleging disability beginning January 5, 2012. (Tr. 12, 408). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on April 20, 2017. (Tr. 80–130). On August 16, 2017, the ALJ issued a decision denying Plaintiff's application for benefits, (Tr. 9–30), and the Appeals Council denied Plaintiff's request for review. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on May 21, 2018. (Doc. 1). Roughly three months later, Plaintiff filed a Motion for Leave to file First Amended Complaint. (Doc. 10). The Undersigned recommended denying Plaintiff's Motion for Leave to file First Amended Complaint (Doc. 17), and Judge Marbley adopted the Report and

Recommendation (Doc. 22). The case then proceeded, and the matter is now ripe for consideration. (Docs. 9, 24, 25, 26).

    A.    **Relevant Hearing Testimony Medical Background**

The ALJ usefully summarized relevant portions of Plaintiff's hearing testimony and medical records.

> The claimant alleged she was unable to work due to her history of back surgery, carpal tunnel syndrome bilaterally, blood clots, and depression (Ex. B6E). At the hearing, she testified that she was disabled due to low back pain, depression, and anxiety. She alleged that simple tasks like daily showering, doing dishes, cooking, and walking are painful for her back, and she stated she has to use a cane or hold a cart when she walks (Ex. B6E at 14). In her Function Report, she alleged she was able to lift no more than 20 pounds, could not squat, could walk about 10 minutes, sit about 20 minutes, and could not kneel (Ex. B7E at 6). She testified that walking and standing exacerbates her back pain. She also said she has difficulty with concentrating or completing tasks and has difficulty getting along with others due to depression (Ex. B7E at 6; Hearing Testimony).
>
> * * *
>
> In terms of the claimant's alleged back pain, she has a history of back problems since 2000 secondary to work-related "wear and tear" (Ex. B19F at 1). She had a back fusion surgery in 2003 (Ex. B19F at 1). However, her spine condition has required no further surgery. On examination in October 2013, she was also able to walk on toes and heels and get on and off the examination table without difficulty (Ex. Bl lF at 2).
>
> In March 2014, Darren J. Holsten, D.C. noted that her low back appeared "relatively stable," and "no additional treatment [was] medically indicated at this time" (Ex. B15F at 4). On examination in August 2014, she had positive straight leg raise on the right, she had a symmetric and steady but slow gait, and she required no assistive device (Ex. B19F at 4). She was able to lift, carry, and handle light objects (Ex. B19F at 4). She said she was unable to squat and rise, but she was able to rise from a sitting position without assistance (Ex. B19F at 4). She had "some difficulty getting up and down from the exam table" (Ex. B19F at 4). Tandem walking was normal, and the claimant could stand but not hop on either foot bilaterally (Ex. B19F at 4). Imaging showed only "mild disc disease at L2-3 and slight curvature of the lumbar spine to the left"(Ex. B19F at 10). On examination in May 2016, she had positive straight leg raise at full extension and tenderness at approximately L2-5, but she had normal range of motion in all extremities, and normal sensation, strength, and coordination (Ex. B31F).

> In April 2013, the claimant underwent a right carpal tunnel release (Ex. B8F; Bl lF at 1). In August 2013, she underwent a left carpal tunnel release (Ex. B8F; B9F; Bl lF at 1). In October 2013, she reported she was "much improved" and "now in search of a job" (Ex. Bl l F at 1). She reported that her right hand felt "a little bit stiff" but was overall doing "very well" (Ex. Bl lF at 2). On examination, her grasp, pinch, manipulation, and fine coordination was normal (Ex.Bl lF at 2). She had "excellent range of motion without neuromuscular deficit" and "no residual inflammatory changes" (Ex. Bl lF at 3). At a psychiatric evaluation in July 2014, she demonstrated unimpaired fine and gross motor skills (Ex. B18F at 3). She had chiropractic treatment to address CTS symptoms (Ex. B20F). In September 2014, she rep1ied that her CTS symptoms were stable, rating her pain at worst at a two and currently at a one (Ex. B20F at 5).

(Tr. 18-19).

### B. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2016, and had not engaged in substantial gainful employment since January 5, 2012, the alleged disability onset date. (Tr. 14). The ALJ determined that Plaintiff suffered from the following severe impairments: chronic low back pain due to sacroiliitis and status-post 2003 lumbar fusion, bilateral carpal tunnel syndrome, diminished respiratory function due to status-post pulmonary embolism, and depression. (Tr. 15). Relevant here, the ALJ considered Plaintiff's obesity, concluding that it did not constitute a "severe" impairment under the Regulations. The ALJ explained:

> There is evidence that the claimant is obese. In May 2014, she had a BMI of 37.61 (Ex. Bl7F). Obesity is a consideration in assessing the claimant's functional capacity and its effect on the other impairments (SSR 02-lP). The undersigned has given due consideration to the claimant's obesity in assessing the claimant's residual functional capacity. However, the evidence fails to establish that the claimant's obesity will more than minimally affect her ability to work full-time. Therefore, the undersigned considered her obesity a non-severe impairment.

(*Id*.). Ultimately, the ALJ found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (*Id*.).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and can occasionally balance, stoop, kneel, crouch, or crawl. In addition, she can never work at unprotected heights or around moving dangerous mechanical parts. She can occasionally work in conditions of humidity and wetness, in extreme heat or cold, in conditions where there are vibrations, and in conditions where there is concentrated exposure to dust, odors, fumes, or other pulmonary irritants. She is also limited to performing simple, routine and repetitive tasks, but not at a production rate pace, for example, no assembly line work. Finally, she is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently, and be adequately and easily explained. She can frequent handle and finger with the bilateral upper extremities. She requires a sit/stand option at the work station to change position each hour for two minutes while remaining on task 90% of the time.

(Tr. 17).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 18).

As for the opinion evidence, the ALJ assigned the state agency medical and psychological consultants' opinions great weight. (Tr. 20 (citing Tr. 159–68; 171–87)). The ALJ explained that "[t]he consultants have program knowledge, and both opinions are consistent with the record as a whole." (*Id.*). The ALJ found, however, that Plaintiff has "greater physical and mental limitations than opined by the consultants based on additional evidence that the consultants did not have access to at the time they provided their opinions." (*Id.*).

The ALJ then considered the opinion of licensed psychologist T. Rodney Swearingen, Ph.D., who opined, among other things, that Plaintiff would have some problems understanding, remembering, and carrying out instructions. (*Id.* (citing Tr. 986–90)). The ALJ gave this opinion some weight, explaining that the opinion concerns Dr. Swearingen's area of expertise, but also noting that the opinion "does not provide specific limitations" and that his limitations "primarily

4

concern [Plaintiff's] subjective report, rather than references to clinical findings." (*Id.*).

Next, the ALJ considered the opinion of consultative examiner Dr. Guy Klein who opined, among other things, that Plaintiff has mild limitations with lifting and carrying weight. (*Id.* (citing Tr. 992–1002)). The ALJ gave this opinion some weight, explaining that portions of the opinion were inconsistent and "unclear." (*Id.*).

The ALJ then turned to the opinion of Clinical Nurse Specialist Lois Prusinowski, who treated Plaintiff's mental health symptoms and oversaw her medications. (*Id.* (citing Tr. 1324–28)). The ALJ gave Ms. Prusinowski's opinion little weight. (*Id.*). The ALJ elaborated on this decision:

> [Ms. Prusinowski] opined as to extreme limitations across a variety of mental functions, which is not supported by treating records. For example, she opined the claimant had constant deficiencies in concentration, persistence, or pace, but treating records indicate she generally has intact attention and concentration on examination (Ex. B24F at 2, 7, 17, 22, 27, 37; B29F at 2 and 7). Further, she opined that the claimant would have continual episodes of decompensation, but the record reflects only one, isolated episode during the entire alleged period of disability. Further, she opined that the claimant had extreme limitation in her ability to adhere to basic standards of neatness and cleanliness, but treatment records regularly show she presents as adequately groomed (Ex. B24F at 1, 6, 16, 22, 27, and 36; B29F at 1and 7). . . .

(Tr. 20–21).

Finally, the ALJ evaluated the "Residual Physical Capabilities Questionnaire" completed by Ms. Prusinowski and Dr. Judith Box. (Tr. 21 (citing Tr. 1334–37)). The ALJ assigned the opinions from this form little weight. (*Id.*). The ALJ explained:

> The undersigned also gave little weight to the opinion of Judith Box, M.D., and Lois Prusinowski, CNS contained in a form completed in December 2016 (Ex. B32F). These providers treat the claimant's depression and anxiety, so the physical limitations opined to in this opinion are outside their area of expertise and treatment, and furthermore, they are inconsistent with medical evidence. For example, they go so far as to opine that the claimant would be off task up to 90 percent of the time in an eight-hour day. No medical evidence supports this opinion, and none was provided in support of this opinion within the form.

5

(*Id.*).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff raises two errors before the Court. First, Plaintiff asserts that the ALJ erred by failing to recognize her obesity as a severe impairment; and second, Plaintiff asserts that the ALJ erred in her evaluation of the opinion evidence. (*See generally* Doc. 24).

### A. Obesity

In her first assignment of error, Plaintiff argues that the ALJ "committed reversible error by failing to recognize [her] obesity as a severe impairment and failing to evaluate the effects of her obesity in determining [her] residual functional capacity." (Doc. 24 at 16).

A claimant "bears the burden of demonstrating that he suffers from a medically determinable physical impairment," *Watters v. Comm'r of Soc. Sec. Admin.*, 530 F. App'x 419,

421 (6th Cir. 2013), as well as "the burden of showing a severe impairment by medical evidence," *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 559 (6th Cir. 2014). The Sixth Circuit construes the Step Two severity regulation as a "*de minimis* hurdle," *Rogers*, 486 F.3d at 243 n.2 (internal quotation marks and citation omitted), intended to "screen out totally groundless claims," *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe." *See* Soc. Sec. Rul. 96–3p, 1996 WL 374181 at *1 (1996).

Accordingly, in this case, the Court must determine whether Plaintiff has satisfied her burden in proving that her obesity constitutes a severe impairment. Plaintiff "does not qualify for disability simply by being obese." *Wright v. Astrue*, No. 1:09-CV-309, 2011 WL 539463, at *5–6 (E.D. Tenn. Jan. 24, 2011), *report and recommendation adopted*, No. 1:09-CV-309, 2011 WL 529959 (E.D. Tenn. Feb. 8, 2011) (citations omitted). Instead, it is Plaintiff's burden to show that obesity "decreases [her] functional capacity to the point that it would preclude work." *Id*. As for the ALJ's obligation, the Regulations do not subject administrative law judges to "a particular mode of analysis" when assessing a claimant's obesity. *Blesdoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2006). Rather, ALJs are instructed to evaluate a claimant's obesity on a case-by-case basis. *See* SSR 02-1p 2002 WL 24686281, at *6 (noting that "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment").

Plaintiff claims that her obesity should have been considered a severe impairment because "the ALJ did not properly consider the effects of her obesity when evaluating her residual functional capacity." (Doc. 24 at 17). There is one critical error with Plaintiff's argument: Plaintiff

7

places the onus entirely on the ALJ, when Plaintiff bears the burden to prove that her obesity is a severe impairment under the Regulations. *See Wright*, 2011 WL 539463, at *5–6.

To show that her obesity constitutes a severe condition, Plaintiff must provide medical records linking her obesity to her alleged work-related limitations. *See Pierce v. Comm'r of Soc. Sec.*, No. 1:18 CV 543, 2019 WL 2331326, at *11–12 (N.D. Ohio May 2, 2019), *report and recommendation adopted sub nom. Pierce v. Berryhill*, No. 1:18CV543, 2019 WL 2330567 (N.D. Ohio May 31, 2019) (requiring plaintiff provide evidence connecting his obesity to his functional limitations); *Wysocki v. Berryhill*, No. CV 16-11753, 2017 WL 3084109, at *5 (E.D. Mich. June 30, 2017), *report and recommendation adopted sub nom. Wysocki v. Colvin*, No. 16-11753, 2017 WL 3051016 (E.D. Mich. July 19, 2017) (requiring the same).

In her Statement of Errors, Plaintiff asserts:

> Proper consideration [of Plaintiff's obesity] could have shed significant light on questions raised by the ALJ: the ALJ noted that a 2014 x-ray demonstrated mild disc abnormalities and questioned those mild objective findings against Ms. Flack's complaints of severely limiting pain. Ms. Flack testified that she faces significant limitations in sitting, standing, and walking for prolonged periods, and her obesity certainly could be a contributing cause of these issues. However, the ALJ failed to adequately consider Ms. Flack's obesity at all and missed an opportunity to square Ms. Flack's with the medical evidence. A proper evaluation of Ms. Flack's obesity and the pain and functional limitations that it could cause, especially in conjunction with Ms. Flack's diagnosed low back conditions, was not performed by the ALJ and thus reversal is warranted.

(Doc. 24 at 19–20). What is missing from her argument, however, is evidence supporting the severity of her obesity and its impact on her ability to work. Indeed, even in her own citation to her medical records, Plaintiff does not provide such supporting evidence:

> ii. Obesity
> 
> On 05/16/2014, Ms. Flack presented to a new family medicine practice to establish care (Tr. 984). Her height was documented to be 66 inches and her weight was 233 pounds, resulting in a BMI score of 37.6 (*Id.*) She was encouraged to adopt a healthy lifestyle including diet and exercise (Tr. 985). Her weight remained

consistent throughout her medical treatment leading up to the ALJ hearing.

(*Id*. at 4).

This does not establish that her obesity "decrease[s] [her] functional capacity to the point it would preclude work." *Wright*, 2011 WL 539463, at *6. Accordingly, while Plaintiff attempts to link her back problems and her limitations in sitting, standing, and walking to her obesity, she has failed to identify medical records showing as much. Without that, the ALJ did not err in finding that Plaintiff's obesity is not severe. *See, e.g.*, *Pierce*, 2019 WL 2331326, at *11–12 (holding that "[w]hile Plaintiff correctly notes that her medical records mention her obesity and BMI calculations, these references are passing and do not indicate any functional limitations"); *Smith v. Astrue*, 639 F. Supp. 2d 836, 845 (W.D. Mich. 2009) (holding that plaintiff's "failure to identify medical opinion supporting her allegation that obesity further restricts her ability to work means that she has not carried her burden of establishing disability") (citations omitted); *Wright*, 2001 WL 539463 at *6 (finding that "[p]laintiff has pointed to no evidence or even any rationale as to why her obesity would limit her function to less than light work in light of the opinions of doctors on which the ALJ relied" and accordingly, "[p]laintiff has not met her burden on showing that she is disabled by her obesity").

Briefly, Plaintiff's reliance on *Shilo v. Comm'r of Soc. Sec.* does not change the Court's conclusion. (*See* Doc. 24 at 18 (citing 600 F. App'x 959 (6th Cir. 2015))). In *Shilo*, the Court found that, in light of the record, the ALJ failed to give the plaintiff's obesity due consideration. *Shilo*, 600 F. App'x at 962. But, unlike in this case, the record in *Shilo* established that the plaintiff's obesity exacerbated his other impairments. *See id*. at 962–64. For example, "[t]he examiner for Ohio's Bureau of Disability Determination observed that Shilo's 'unusual morbid obesity' does not allow him to walk around properly.'" *Id*. at 962 (internal citations omitted).

9

Based on that and other evidence, the ALJ in *Shilo* found that "[u]nderstood collectively, the medical records confirm . . . that Shilo suffers from multiple ailments that cause him considerable discomfort, most associated with his extreme obesity." *Id*. On top of that, the plaintiff in *Shilo* had previously qualified for social security benefits due to his obesity and back problems. *Id*. In other words, the plaintiff in *Shilo* met his burden to show that his obesity was severe. The record in this case is different, and Plaintiff has not met her burden. *See, e.g.*, *Pierce*, 2019 WL 2331326, at *11–12 (holding that *Shilo* was "distinguishable" from plaintiff's case because the plaintiff in *Shilo* "previously received disability benefits due to his morbid obesity and the ALJ determined that his obesity was a severe impairment. By contrast, here, Plaintiff points to nothing other than her own testimony that her obesity causes any work-related limitations") (internal citation omitted); *Wysocki*, 2017 WL 3084109, at *5 (rejecting plaintiff's reliance on *Shilo* because unlike the plaintiff in *Shilo*, plaintiff "d[id] not show that her medical records establish such a linkage and did not even allege disability due to obesity").

Based on the foregoing, the ALJ did not err in finding that "the evidence fails to establish that the claimant's obesity will more than minimally affect her ability to work full-time," and concluding that her obesity is a non-severe impairment. (Tr. 15).

**B. Opinion Evidence**

Plaintiff next challenges the ALJ's evaluation of the opinion evidence.

**i.   Ms. Prusinowski's Mental Impairment Questionnaire**

Plaintiff first attacks the ALJ for assigning little weight to Ms. Prusinowski's opinion. (Doc. 24 at 20). On September 28, 2016, Plaintiff's counselor Ms. Prusinowski completed a mental impairment questionnaire. (Tr. 1324–28). In her opinion, Ms. Prusinowski opined, in part, that Plaintiff would suffer absenteeism more than three times per month due to her mental health

10

conditions. (Tr. 1326). Ms. Prusinowski also found that Plaintiff has moderate limitations in understanding and remembering short and simple instructions; sustaining an ordinary routine; working in coordination with or close proximity to others without being distracted by them; and making simple work-related decisions. (*Id*.).

Plaintiff argues that the ALJ was bound by the "treating source rule," and was required to provide "good reasons" for discounting Ms. Prusinowski's opinion. (Doc. 24 at 20). Plaintiff misstates the law. "The term 'treating source' is a legal term of art defined in the regulations." *Hatfield v. Astrue*, No. 3:07-CV-242, 2008 WL 2437673, at *1 (E.D. Tenn. June 13, 2008) (citing 20 C.F.R. § 404.1502). "'Treating source'" is defined as "'your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.'" *Id*. (quoting 20 C.F.R. § 404.1502). "'Acceptable medical source' in turn is defined in the regulations via specific enumeration of five such sources." *Id*. (citing 20 C.F.R. § 404.1502 ("Acceptable medical source refers to one of the sources described in § 404.1513(a) who provides evidence about your impairments."); *id.* § 404.1513(a) ("acceptable medical source" includes licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists)). [1]

Because clinical nurse specialists, like Ms. Prusinowski, are absent from the list of "acceptable medical sources," *see id*., Ms. Prusinowski is an "other source." *See* SSR 06-03P (S.S.A.), 2006 WL 2329939, at *2. Relevant here, "[o]ther sources" cannot establish the existence of a medically determinable impairment but "may provide insight into the severity of the

---

[1] This regulation has been rescinded, but still applies to claims (like this one) filed before March 27, 2017. 20 CFR § 404.1527.

impairment and how it affects the individual's ability to function." *Id.* Such opinions are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file." *Id.* Accordingly, the ruling explains that opinions from non-medical sources who have seen the claimant in their professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, how well the source explains the opinion, and any other factors that tend to support or refute the opinion. *Id.* at *4–5. Finally, the ruling states that:

> [a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03P, 2006 WL 2329939 at *6.

Here, the ALJ considered and ultimately rejected Ms. Prusinowski's opinion for record-based reasons. Upon review of the medical evidence, the ALJ found that Ms. Prusinowski's extreme limitations were not consistent with Plaintiff's treatment records. (Tr. 20). In doing so, the ALJ identified three primary inconsistencies.

First, the ALJ found that Ms. Prusinowski's opinion that Plaintiff had constant deficiencies in concentration, persistence, or pace were inconsistent with Plaintiff's records, which indicate "she has generally intact attention and concentration on examination." (*Id.*). Second, the ALJ found that Ms. Prusinowski's opinion that Plaintiff would have continual episodes of decompensation was inconsistent with the record, which "reflects only one, isolated episode during the entire alleged period of disability." (Tr. 21). Third, the ALJ found that Ms. Prusinowski's

12

opinion that Plaintiff has extreme limitations in her ability to adhere to basic standards of neatness and cleanliness was inconsistent with the record, which "regularly show[s] that she presents as adequately groomed." (*Id.*).

The ALJ's consideration of these three inconsistencies was proper. *See, e.g.*, *McCaleb v. Comm'r of Soc. Sec.*, No. 1:16-CV-466, 2017 WL 382339, at *5 (W.D. Mich. Jan. 27, 2017) (holding that the ALJ reasonably assigned little weight to a licensed clinical social worker after the ALJ found her treatment "notes to be inconsistent with the severity of the opinion"); *see also* 20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that opinion.").

In support, Plaintiff relies on treatment records, which arguably support Ms. Prusinowski's opined limitations. (*See* Doc. 24 at 20–21 ("Ms. Flack argues that the opinions of her providers are supported by some evidence in the record, including reports of tearfulness, irritability, anger, decreased energy, fatigue, anhedonia, low motivation, trouble sleeping, forgetfulness, and impatient psychiatric treatment following suicidal ideations.")). But, by citing this medical evidence, all Plaintiff establishes is that she and the ALJ view the weight of the evidence differently. This is not grounds for reversal. Nor may the Court reweigh the evidence and substitute its judgment for that of the ALJ. The law prohibits the Court from doing so. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ")).

In sum, the ALJ provided explicit and valid reasons, consistent with the regulatory factors, for not crediting Ms. Prusinowski's opinion. Although Plaintiff may disagree with the ALJ's final

assessment of Ms. Prusinowski's opinion, Plaintiff has not shown that it was outside the ALJ's permissible "zone of choice" that grants ALJs discretion to make findings without "interference by the courts." *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

### ii. Ms. Prusinowski's and Dr. Box's Residual Functional Capacity Questionnaire

In addition, Plaintiff specifically avers that the ALJ erred in her evaluation of the Residual Functional Capacity Form completed by psychiatrist Dr. Box and Ms. Prusinowski. (Doc. 24 at 20).

The ALJ expressly considered this form:

> The undersigned also gave little weight to the opinion of Judith Box, M.D., and Lois Prusinowski, CNS contained in a form completed in December 2016 (Ex. B32F). These providers treat the claimant's depression and anxiety, so the physical limitations opined to in this opinion are outside their area of expertise and treatment, and furthermore, they are inconsistent with medical evidence. For example, they go so far as to opine that the claimant would be off task up to 90 percent of the time in an eight-hour day. No medical evidence supports this opinion, and none was provided in support of this opinion within the form.

(Tr. 21).

The Undersigned concludes that the ALJ did not err in her evaluation of this opinion. To start, it is not clear from Plaintiff's Statement of Errors—nor from the medical records—that Dr. Box was or is Plaintiff's treating physician. As discussed, a "treating source" is a claimant's "own physician, or other acceptable medical source," who provides or has provided the claimant with treatment and who has or had "an ongoing relationship" with the claimant. 20 C.F.R. § 404.1502. While Dr. Box is certainly an "acceptable medical source," it does not appear that the ALJ was under an obligation to apply a deferential standard to Dr. Box's opinion.

Regardless of Dr. Box's status, the ALJ properly discounted the Residual Functional Capacities Questionnaire and found that, as mental health providers, Dr. Box's and Ms. Prusinowski's opinions concerning Plaintiff's physical limitations fell outside their area of

14

expertise. *See* 20 C.F.R. § 404.1527(c)(5) (less weight given to an opinion of a specialist about medical issues not related to her area of specialty); *Hicks v. Comm'r of Soc. Sec.*, No. 2:09-CV-01001, 2011 WL 1114312, at *15 (S.D. Ohio Feb. 2, 2011), *report and recommendation adopted*, No. 2:09-CV-1001, 2011 WL 1124983 (S.D. Ohio Mar. 25, 2011) (noting that psychiatrist's treatment notes provided no indication that he was significantly involved in plaintiff's physical treatment notes, and accordingly, "to the extent [psychiatrist] was assessing Plaintiff's physical impairments, the ALJ was justified in finding his opinion to be unsupported and outside his specialty."). In sum, Plaintiff has shown no error in this regard.

### iii. State Agency Consultants

Finally, Plaintiff alleges that the ALJ erred in giving "the greatest weight" to the opinions of the state agency psychological consultants, arguing that the ALJ should have given greater weight to the opinions of Ms. Prusinowski and Dr. Box. (Doc. 24 at 20–21). The Undersigned disagrees.

The thrust of Plaintiff's argument on this point is that the state agency consultants provided their opinions before her inpatient hospitalization. But the ALJ was aware of this fact and expressly acknowledged it in her opinion:

> As for the opinion evidence, the undersigned gave the state agency medical and psychological consultants' opinions great weight (Ex. B3A and B5A). The consultants have program knowledge, and both opinions are consistent with the record as a whole. However, the undersigned found the claimant had greater physical and mental limitations than opined by the consultants based on additional evidence that the consultants did not have access to at the time they provided their opinions.

(Tr. 20). The ALJ also considered and discussed Plaintiff's hospitalization records in her opinion, further alleviating Plaintiff's concern in this regard. (Tr. 19). *See, e.g.*, *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) ("McGrew also argues that the ALJ improperly

15

relied on the state agency physicians' opinions because they were out of date and did not account for changes in her medical condition. It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after [the state agency physician's] assessment . . . and took into account any relevant changes in McGrew's condition").

Accordingly, it was reasonable for the ALJ to rely on the state agency reviewers' opinions in formulating the RFC. Plaintiff has shown no reversible error.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 24) and **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.

Date:  June 27, 2019                                    /s/ Kimberly A. Jolson
                                                                               KIMBERLY A. JOLSON
                                                                               UNITED STATES MAGISTRATE JUDGE